NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,          :

               Plaintiff,          :

                             Civil Action No. 04-115(JWB)

          v.          :

ANTONIO PIRES DE ALMEIDA;          :          **O P I N I O N**
TURIST-CAMBIO VIAGENS e
TURISMO LTDA; KESTEN          :
DEVELOPMENT CORP. and
ROSELI CIOLFI,          :

              Defendants.          :


**APPEARANCES**:

     CHRISTOPHER J. CHRISTIE
     United States Attorney
     By:  Peter W. Gaeta
         Assistant United States Attorney
     Federal Building
     970 Broad Street
     Newark, New Jersey  07102
     (Attorney for Plaintiff)

     FRIEDMAN KAPLAN SEILER & ADELMAN
     By:  Paul J. Fishman, Esquire
         Emily A. Stubbs, Esquire
     One Gateway Center, 25th Floor
     Newark, New Jersey  07102
     (Attorneys for Defendants)

**BISSELL**, Chief Judge

     This matter comes before the Court on a motion by Defendants

Antonio Pires de Almeida, Turist-Cambio Viagens e Turismo Ltda.,

Kesten Development Corp. and Roseli Ciolfi (collectively

"Defendants") to dismiss the United States Government's complaint
with prejudice, pursuant to Fᴇᴅ. R. Cɪᴠ. P. 12(b).  The Court has
jurisdiction of this case pursuant to 18 U.S.C. § 1956(b) and 28
U.S.C. §§ 1331 & 1345.  For the reasons set forth below, the
Court GRANTS the Defendants' motion to dismiss, with prejudice,
as to all Defendants.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

I.  <u>Parties</u>

     Antonio Pires de Almeida ("Pires") is a foreign national
residing in Brazil.  (Compl. ¶ 1.)  Pires is currently under
indictment in the this District for alleged violations of 18
U.S.C. § 1956.  (<u>Id.</u>)  The Government alleges that, since the
1990's, Pires has been involved in money laundering transactions
in the United States through the use of corporate entities, which
include Turist-Cambio Viagens e Turismo Ltda. ("Turist-Cambio")
and Kesten Development Corp. ("Kesten")  (<u>Id.</u>)

     Roseli Ciolfi ("Ciolfi") is an unindicted co-conspirator in
the criminal case who allegedly facilitates the alleged money
laundering transactions of Pires at his command through Turist-
Cambio and Kesten.  (<u>Id.</u> at ¶ 4.)

     Turist-Cambio is incorporated under the laws of the
Federative Republic of Brazil.  Kesten is incorporated under the
laws of the British Virgin Islands.  (<u>Id.</u> at ¶ 5.)  The
Government alleges that Pires is the appointed representative of

-2-

Turist-Cambio and exercises dominion and control over all accounts maintained by Turist-Cambio, Kesten and other entities. (<u>Id.</u>)

## II.  **Background**

Pires is allegedly a "Black Market" money exchanger based in Brazil.  (<u>Id.</u> at ¶ 11.)  The "Black Market" operates outside of the formal banking system in South American and provides drug traffickers with a mechanism to exchange their illegal proceeds of U.S. dollars into local currency.  (<u>Id.</u>)  In exchange, Pires allegedly sells the U.S. dollar to other customers.  (<u>Id.</u> at ¶¶ 8-10.)  The Government alleges that Ciolfi and Pires used Turist-Cambio, Kesten and other entities in furtherance of their money laundering activities.  (<u>Id.</u> at ¶ 12.)

### **Glikas Organization**

In the course of various investigations in the New York City and New Jersey metropolitan area, the Drug Enforcement Administration (DEA) established that Ernesto Ceballos ("Ceballos") is the leader of a major drug organization operating from Columbia.  (<u>Id.</u> at 13.)  Although the Government indicted Ceballos, he remains a fugitive while he resides in Columbia and allegedly continues his narcotic trafficking.  (<u>Id.</u> at 14.)

The DEA investigation determined that Marco Glikas ("Glikas") was part of an organization laundering money for Ceballos through the "Black Market" in Sao Paulo, Brazil.  (<u>Id.</u>

-3-

at ¶ 15) Glikas would use members of his organization to collect the drug proceeds from the Ceballos organization in New York City and New Jersey and deliver them to Pires, Rauol Srour ("Srour") and Antonio Claramunt ("Claramun") in Brazil.  (Id.)  Allegedly huge amounts of money were collected and smuggled out the United States, converted into checks by Pires, Srour and others and deposited into the U.S. accounts.  (Id. at ¶¶ 13-20.)

The complaint also alleges that Glikas, who was convicted in New Jersey along with Alberto Kern for money laundering, would deliver the large sums of narcotics proceeds to Pires, Srour, and Claramount who supposedly knew that they were receiving drug proceeds.  (Id. at ¶¶ 21-23.)

**Group A Transactions**

The Group A transactions revolve around the activities of Glikas and his couriers.  Allegedly these individuals would take the drug proceeds they received from the Ceballos organization, smuggle them out of the United States for conversion into checks by Turist-Cambio and exchange entities and bring the checks back into the United States for deposit into the Tadeland, Beacon Hill and Venus accounts.  (Id. at ¶¶ 15-20.)  After the checks purchased with funds from alleged narcotic trafficking are deposited to the Tadeland account at EAB Bank and the Beacon Hill account at Chase Manhattan Bank they would be wire transferred into the Venus account.  The complaint provides a schedule, which

-4-

alleges specific narcotic proceeds that the Glikas organization received on specific dates from the Ceballos drug oranization which would later be deposited, in check form, to the accounts controlled by Defendants.  The complaint includes named individuals, such as Ceballos, Glikas and Pires, the amount of supposedly drug related proceeds, dates and the conversion of the cash into checks before being deposited and wired to the target accounts.

### Group B Transactions

The complaint also alleges that Pires' co-defendant in the criminal matter, Srour, used his "Jazz" account which was also located at MTB Bank, with Pires' "Venus" account, to receive $7.6 million in money laundering proceeds which were "book transferred" within MTB Bank to the Venus account.  Allegedly the originator of the funds to the Jazz account was the Beacon Hill Lisco account held by Claramunt.  (Id. at ¶ 16.)  The complaint further alleges that after Glikas deposited the checks purchased with drug proceeds to the Beacon Hill Lisco account they were wired to Jazz and transferred to Venus.  The Group B transactions include the involvement of Speedo Joyeros, a wholesale gold exchange company in Panama formerly operated by Moshe and Yardena Hebroni.  Moshe Hebroni would allegedly instruct Glikas, acting as a courier, to pick up the drug money and smuggle it out of the United States to Brazil.  In Brazil the money was delivered to

-5-

Pires at Turist-Cambio, Srour, and Claramunt, where it was converted into checks for delivery back to the United States and deposited into accounts controlled by Pires.  On September 17, 2000, Moshe Hebroni passed away, under what the Government calls "suspicious circumstances," and his wife was arrested and pled guilty to narcotics money laundering in the Eastern District of New York (Id. at ¶¶ 24-25.)

The complaint alleges that the layering of funds through other accounts, such as the Beacon Hill Lisco account which was controlled by Srour and Pires through a nominee, aided in preventing money launders from being detected.  Furthermore, internal bank transfers which are completed without the need of a Federal Reserve Wire Transfer, that leaves an electronic paper trail, assisted in concealing the illegal activities.  Also, the Jazz account acted as a "cut out," with the Venus account never transferring money back to Jazz as would be expected if these were legitimate transactions between two exchange houses.  (Id. at ¶¶ 31-33.)  The Beacon Hill Service Corporation, which maintained accounts like Lisco and allowed the accounts to operate without State or Federal regulatory supervision, was closed by the Manhattan District Attorney's Office for operating an illegal money remitting business (Id. at ¶ 34.)

**Group C Transactions**

The complaint states that Srour controlled the Jazz account

-6-

and is a co-defendant of Pires in the pending criminal money laundering case.  Glikas would also deliver drug proceeds to Srour.  (Id. at ¶¶ 15-17, 21, 23-25 & 27-33.)  After the funds were deposited into the Jazz account maintained at MTB Bank, the funds were book transferred into the Venus account also maintained at MTB.  The complaint provides a schedule for the Group C Transactions which alleges the dates and amounts which Pires received totaling $14 million in drug proceeds from Srour through the Jazz account.

**The Nolasco Investigation**

On June 27, 2002, the United States Customs Service seized the contents of 39 bank accounts located at Merchants Bank of New York, totaling approximately $21 million.  (Id. at ¶ 35.)  The accounts were seized after tracing the contents to narcotic proceeds.  The transactions in the accounts were controlled by Carolina Nolasco, a private banker who allegedly serviced Brazilian Black Market exchange houses from New York City and New Jersey.  (Id.)  Over $21 million were seized from these accounts several of which allegedly belong to Pires and were named "Gatex," "Harber" and "Sorabe."  (Id. at 36.)

The complaint alleges that Pires opened the Gatex, Harber and Sorabe accounts due to the DEA's investigation of the Venus account at MTB Bank.  (Id. at 37.)  The complaint asserts that Pires was alerted to the DEA's investigation and, being concerned

-7-

with his operation, traveled to the United States on January 10, 1999, three days prior to the Venus account being seized. (Id.) Pires traveled to the United States and signed documents to open allegedly new money laundering accounts. From January 13, 1999 through December 3, 1999 approximately $8.2 million dollars were deposited into the Venus account, which was seized by the Government alleging that the funds were traceable to narcotics money laundering. (Id. at ¶ 37.) The Sorabe account was opened at Merchants Bank on February 1, 1999, approximately 30 days after the seizure of the Venus account. (Id. at 38.) Transactions continued to occur in the Sorabe account until the Government seized the Harber and Gatex accounts on June 27, 2002. (Id.)

### Brazilian Criminal Investigation

Allegedly the business operation of Turist-Cambio and Kesten by Pires and Ciolfi was also conducted in violation of Brazilian money laundering laws and was being investigated by the Brazilian Federal Prosecutor's Office. (Id. at ¶ 26.) These activities are still under investigation there. (Id.)

### Current Motion before the Court

Defendants have brought this motion to dismiss the Government's complaint for four reasons: (1) the action is barred by a five-year statute of limitations; (2) the complaint fails to state a claim for relief; (3) the Court lacks personal

jurisdiction over Defendants; and (4) the doctrine of claim preclusion bars the action against the defendants.  The Government opposes all four grounds advanced by Defendants.

**DISCUSSION**

I.   **Statute of Limitations**

Defendants assert that the five-year statute of limitations bars the relief sought by the Government.  Specifically, Defendants contend that because the alleged illegal activities in the complaint occurred in 1997 and 1998, the five-year statute of limitations applicable to each expired in 2002 and 2003. Defendants argue that the Government filed its complaint on January 12, 2004, two weeks after the statute of limitations had run on the last transaction the government seeks to penalize. The Government admits that its complaint, which institutes a civil penalty action, is based on alleged money laundering transactions that occurred in 1997 and 1998 and subject to a five-year statute of limitations.

The Government, however, argues that the relevant statute of limitations, under 28 U.S.C. § 2462, contains a tolling provision which renders the complaint timely.  28 U.S.C. § 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced with five years from the date when the claim first accrued if, _within the same period, the offender or the property is found within the United States in order that proper service may be made thereon._

-9-

28 U.S.C. § 2462 (emphasis added).  Thus, a civil action can be brought if the offender or property is available for service of process at any point within the five year period and the statute of limitations expires at the end of that five year period.

The Government contends that it had five years to bring its Section 1956(b) civil penalty action against Defendants from the dates of each of the alleged money laundering activities, so long as Defendants were in the United States during that five year period.  The Government further asserts that if the Defendants were absent from the country the statute of limitations would toll during their absence.  The Government, however, concedes that there is no direct precedent that reads this tolling interpretation into the statute.  Yet, the Government attempts to provide authority for this interpretation of Section 2462 from the Third Circuit's opinion in Contents of Account Number 03001288 v. United States, 344 F.3d 399 (3d Cir. 2003).

In Contents of Account, the government brought a civil forfeiture action for $1.8 million in bank accounts located abroad.  344 F. 3d at 401-02.  The claimant was arrested in August 1992 and pled guilty to a charge of conspiring to distribute and possess heroin.  Id.  In May 2000, the government instituted a civil forfeiture action against the proceeds from illegal heroin trafficking.  Id.  The claimant moved to dismiss the complaint based on the statute of limitations, under 19

-10-

U.S.C. § 1621, due to the fact that the government had learned of the bank accounts' existence eight years earlier before filing the civil forfeiture action.  Id.  Section 1621 contained a tolling provision which excluded from the limitation any period when the claimant was absent from the United States or the property subject to the forfeiture was being concealed from the country.  Id. at 406-07.  In particular, Section 1621 provides:

> No suit or action to recover any duty under section 1592a(d) of this title, or any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced with five years after the time when the alleged offense was discovered . . . except that – – . . .
> (2) the time of the absence from the United States of the person subject to the penalty or forfeiture, or of any concealment or absence of the property, shall not be reckoned within the 5-year period of limitation.

19 U.S.C. § 1621 (emphasis added).  The Third Circuit reasoned that "[t]he statute clearly instructs that the five-year statute of limitations shall be tolled during 'any concealment or absence of the property.'" 344 F.3d at 406.  Thus, the court found that the statute of limitations had not expired because the funds were absent from the United States from the time of the claimant's arrest in 1992 through the filing of the forfeiture complaint in 2000.  Id.

The Government does not argue that Section 1621 applies to the instant case, but proposes that Section 2462 and 1621 are "almost identical."  However, Section 2462 does not contain any

language specifically providing for the tolling of the statute of limitations by the absence from the United States, which is clearly in contrast to Section 1621.  The Court is not persuaded by the Government's interpretation or analysis of Section 2462.

The Court notes that the Government could have properly served Pires in January 1999 when he was in New York to open new bank accounts on that trip, a period of time within the five-year statute of limitations as proscribed in Section 2462. Furthermore, consistent with the allegations of the Complaint, Turist-Cambio and Kesten could have been served through Pires under Fed. R. Civ. P. 4(h)(1).  Accordingly, each of these three defendants was "found within the United States in order that proper service [could] be made thereon."  28 U.S.C. § 2462. Therefore, as to these three Defendants, the Complaint is dismissed as time-barred.  However, there is no indication that the Defendant Ciolfi was in this country during the period of time in question.  Nor could service on a co-defendant be effective as to her.  Therefore, as to Ms. Ciolfi, the other grounds for dismissal must be assessed.

## II.  Claim for Relief Pursuant to 18 U.S.C. § 1956(b)

### A.   Standard Applied to Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A district court may dismiss a complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of

facts which could be proved consistent with the allegations.  In re Party City Sec. Litig., 147 F. Supp. 2d 282, 297 (D.N.J. 2001) (citing Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993)).  Granting a motion to dismiss under Fed. R. Civ. P.12(b)(6) can result in a dismissal at an early stage of a case; therefore, a district court must accept "the allegations of [a] complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff." Bd. of Trs. of Bricklayers v. Wettlin Assocs., Inc., 237 F.3d 270, 272 (D.N.J. 2001)(emphasis added).

A complaint may not be dismissed unless it appears beyond doubt that "'the facts alleged in the complaint, even if true, fail to support the claim.'" Id. (quoting In re Warfarin Sodium, 214 F.3d 395, 397 (3d Cir. 2000)).  Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness.  Id.

A court reviewing the sufficiency of a complaint has a limited role.  The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims.  Id. (citing Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000)).  A court may properly refer, however, to the factual allegations contained in other documents, such as documents referred to in the complaint and matters of public record, if the claims of the plaintiff are

-13-

based upon those documents.  Id. (citing In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997)).  In other words, such documents must be "integral to or explicitly relied upon in the complaint."  Id. (quoting In re Burlington Coat Factory, 114 F.3d at 1426).

To obtain a civil penalty pursuant to Section 1956(b), the government must allege that the defendants conducted , or attempted to conduct, a financial or monetary transaction described in Section 1956(a) or Section 1957.  18 U.S.C. § 1956(b)(1).  To meet that burden, the government must allege that the predicate crime, drug trafficking, occurred.  United States Carucci, 364 F.3d 339, 344 (1st Cir. 2004).  In addition, the government must plead facts to support that the transactions actually involved the proceeds of the specified illegal activity, drug trafficking.  United States v. Omoruyi, 260 F.3d 291, 294 (3d Cir. 2001).  Accordingly, the government must plead the basic elements of the cause of action by providing evidence that the financial transactions at issue involve the proceeds of drug trafficking.

Defendants argue that none of the transactions described in the Complaint allege with adequate specificity the drug related operations that generated the funds eventually processed through the alleged money-laundering schemes.  Defendants confuse the quantum and specificity of proofs required to establish a claim

-14-

with the standards to be met by a pleading in order to withstand a Rule 12(b)(6) motion.  The allegations of the Complaint in this respect are sufficient at the pleading stage.  Defendants' Rule 12(b)(6) motion is denied.

**III.  <u>Service of Process</u>**

Defendants have withdrawn their motion to dismiss based upon the Government's failure to effect service of process.  (Defs.' Reply Mem. at 1 n.1.)

**IV.  <u>Personal Jurisdiction</u>**

Defendants also contend that they did not have constitutionally sufficient minimum contacts to be sued in New Jersey or elsewhere in the United States.  Title 18 U.S.C. § 1956(b)(2) provides for personal jurisdiction over foreign persons and entities in civil penalty cases.  18 U.S.C. § 1956(b)(2).  In the present matter, once the Government properly served the Defendants this Court had jurisdiction over them for the offenses they allegedly committed in the United States as set forth in the complaint.  <u>United States Securities and Exchange Commission v. Carrillo</u>, 115 F.3d 1540, 1534 (11th Cir. 1997) (finding that for purposes of minimum contacts personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process).

In this matter, the complaint alleges that Defendants (including Ciolfi) were part of a large narcotic money laundering

-15-

conspiracy from the Ceballos drug organization operating in New Jersey and New York.  Allegedly the drug proceeds were ultimately converted into checks and deposited into bank accounts within the United States.  The record indicates that a large sum of the alleged illegal activities occurred in both New Jersey and New York.  Thus, the Court finds that Defendants, including Ciolfi, did have minimum contacts with this forum sufficient to establish the presence of in personam jurisdiction.

**V.   Doctrine of Claim Preclusion**

Defendants assert that the Government's motion should also be dismissed under the doctrine of claim preclusion.  Claim preclusion "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d 187, 194 (3d Cir. 1999)  Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action.  Id.  In determining whether two actions are based on the same "cause of action," the Third Circuit has articulated that the court must look to whether there is an "essential similarity of the underlying events giving rise to the various legal claims." Id. (internal citation omitted).  If these factors are present, a claim that was or could have been raised previously must be

-16-

dismissed as precluded.  Id.

_____Defendants assert that the Government's current claim should
be dismissed because the earlier civil forfeiture action involved
the same parties, the Government and Turist-Cambio.  The
Government, however, contends that these are two different
actions because the earlier action was an in rem proceeding and
the current is a civil penalty proceeding.

The United States District Court for the Central District of
California addressed a similar situation in United States v.
Banco Internacional/Bital S.A., 110 F. Supp. 2d 1272 (C.D. Cal.
2000).  In Banco Internacional, the government brought an action
seeking a civil penalty pursuant to Section 1956(b) following the
dismissal (by stipulation) with prejudice of a forfeiture
proceeding involving the same claimant and funds.  110 F. Supp.
at 1276-80.  The defendant responded to the subsequent civil
penalty action with a motion for summary judgment asserting the
doctrine of claim preclusion.  Id. at 1276.  The district court
granted the defendant's motion reasoning that the government
neglected to initiate a Section 1956(b) civil penalty action in
the prior forfeiture proceeding.  Id. at 1280.

_____Here, the two actions involve claims arising from the same
underlying events.  In both the civil forfeiture proceeding and
this action the government alleged that Pires, Turist-Cambio and
Kesten were involved in laundering narcotics proceeds received

-17-

from Glikas in 1997 and 1998.  In addition, the complaint in the immediate action contains allegations that the seized funds at issue in the civil forfeiture proceeding were involved in the same money laundering scheme in dispute in the current action.  Furthermore, considering the individuals allegedly involved in the money laundering scheme, it is fair to assume that witnesses and evidence would lead to substantive overlap in the civil penalty action with the witnesses and evidence in the civil forfeiture action.  Finally the allegations in the present Complaint regarding Ms. Ciolfi, if taken as true, would identify her as being (at least) a party in privity with the Defendants/Claimants in both the <u>in rem</u> and <u>in personam</u> actions.  Ms. Ciolfi is allegedly an owner and operator of Turist-Cambio. (Compl. at page 15).  <u>See</u> <u>also</u> <u>id.</u> at ¶¶ 4, 12, 25, 26 and 28. Based on the totality of the circumstances the Court concludes that (1.) there are indeed essential similarities between the issues involved in both proceedings, and (2.) Defendant Ciolfi is a "privy" within the contemplation of claim preclusion.  Thus, the complaint should be dismissed against her, under that doctrine.[1]

---

[1]    Had this action not been dismissed as to the defendants Pires, Turist-Cambio and Kesten under the applicable statute of limitations, claim preclusion would support dismissal as to those three defendants as well.

## CONCLUSION

Based on the foregoing reasons, the Court grants the Defendants' motion to dismiss, with prejudice, as to all Defendants.


/s/    John W. Bissell
                JOHN W. BISSELL
                   Chief Judge
        United States District Court


DATED:  March 7, 2005

-19-